## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARLENE SPARROW OLOKO, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 17-cv-07626 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| RECEIVABLE RECOVERY SERVICES | ) | |
| LLC, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| DEFENDANT. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Marlene Sparrow Oloko ("Plaintiff"), by and through her attorneys at Community Lawyers Group, Ltd., and for her Response to Defendant's Motion for Summary Judgment, states as follows:

## INTRODUCTION

Defendant Receivable Recovery Services, Inc. ("Defendant") argues in its Motion for Summary Judgment ("Motion") that it did not violate § 1692g(b) the Federal Debt Collection Practices Act ("FDCPA") when it sent two letters to Plaintiff on May 8, 2017 and June 7, 2017. The first letter stated in part that Plaintiff had 30 days after receiving the letter to dispute the amount in the letter. The first letter also stated that Plaintiff had 45 days from the date that Defendant received the debt to respond otherwise her debt may be reported to the consumer reporting bureau. Plaintiff then received another letter on June 7, 2017, demanding payment immediately but the letter never stated whether Plaintiff still had time to dispute her debt. Defendant sent this letter that overshadowed Plaintiff's right to validate her debt. Defendant argues several points against Plaintiff's claim. One, Defendant argues that Plaintiff lacks Article III

standing to dispute her claim because she cannot prove an injury in fact. Defendant next argues that Defendant did not overshadow Plaintiff's validation rights because the letter adequate provides notice of her rights. Defendant then states that it did not send a second letter prior to the expiration of the validation period. Finally, Defendant states that it is entitled to summary judgment because Plaintiff cannot prove that the letter was confusing or that a significant portion of the population would be confused by the language of the letter. All of Defendant's arguments fly in the face of the facts and the law. First, Plaintiff has established Article III standing through her FDCPA claim. Second, this Court and others have held that debt collectors are not permitted to overshadow a consumer's right to validate their debt Based on Plaintiff's arguments and the established case law below, Plaintiff requests that this Court grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

## **ARGUMENT**

**A.    Plaintiff has adequately established Article III Standing because she has suffered an "injury in fact."**

Defendant argues that Plaintiff does not have Article III standing to sue, relying mainly on its interpretation of the Supreme Court case *Spokeo v. Robins*, No. 13-1339, 136 S. Ct. 1540 (U.S. 2016). Specifically, Defendant argues that because Plaintiff has not suffered an injury in fact, she is not entitled to relief. (Memorandum, Dkt. # 39, pg. 4-5) Defendant's argument misconstrues and misanalyses *Spokeo* and it's clear under *Spokeo* that Plaintiff has Article III standing in this case, because RRS violated Plaintiff's right to dispute her debt under the FDCPA. In *Spokeo*, the Court held that a Plaintiff must show particularization as well as a concrete injury, both of which Plaintiff has shown here. Nowhere in *Spokeo* does it state that a Plaintiff must have actual, or out-of-pocket damages in order to have standing.

There is no need for out of pocket damages or emotional distress in order for a Plaintiff to show an Article III injury. *Spokeo* acknowledges that both tangible or intangible injuries can satisfy the requirement of concreteness. To be sure, "concrete" does not require proof of an economic or monetary injury, let alone actual "damages". See, e.g., Id.; see also *Lane v. Bayview Loan Serv.*, LLC, 2016 U.S. Dist. LEXIS 89258 at (N.D. Ill. July 11, 2016) ("even absent actual monetary damages, it is still possible to satisfy the concrete-harm requirement.") To the contrary, *Spokeo* reaffirms that a concrete injury can amount to nothing more than a "risk of real harm." *Spokeo*, 136 S.Ct. at 1549. In fact, *Spokeo* goes even further, recognizing that the alleged violation of a statute, by itself, can, at least in some circumstances, supply the requisite injury. *Id*. at 1544.

Justice Thomas elaborated on this in his concurring opinion in *Spokeo*, noting that "Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights." *Spokeo* at 1553, (Thomas, J., concurring), citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Furthermore, "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right". *Spokeo* at 1553, citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374 (1982). In *Havens Realty Corp. v. Coleman*, the Court held that a housing-discrimination "tester" had standing to bring suit based on a violation of his "statutorily created right to truthful housing information." *Havens Realty Corp. v. Coleman* 455 U.S. 363, 374 (1982). Although the "tester" had no "intention of buying or renting a home" and "fully expect[ed] that he would receive false information," the Court held that he had standing because anyone "who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id*. at 373–74 (internal quotation marks omitted).

Justice Thomas further writes in his concurring opinion that "Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiff alleged only the violation of those rights and nothing more. 'Private rights' are rights 'belonging to individuals, considered as individuals.'". *Spokeo*, at 1551, (J. Thomas, concurring), (citing 3 W. Blackstone, Commentaries *2). Furthermore, "in a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded." *Id*. While Article III standing requires a concrete injury even in the context of a statutory violation, a violation of substantive rights is itself a concrete injury, thus satisfying Article III.

The violation of a substantive, or private, right granted under the FDCPA can be enough to grant a Plaintiff standing, even without "actual" damages. See *Dickens v. GC Services Limited Partnership*, 2016 U.S. Dist. LEXIS 94621 (M.D. Fla., July 20, 2016); also see *Lane v. Bayview Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 89258 (July 11, 2016). Also see *Church v. Accretive Health*, 2016 WL 3611543 (11th Cir. July 6, 2016) (unpublished) (Holding that the statutorily created right under the FDCPA to receive accurate information from a debt collector in a letter was enough to confer Article III standing. *Id*. at pg. 8-9). Also see *Quinn v. Specialized Loan Servicing, LLC*, 16-cv-2021 (N.D. IL. August 11, 2016) (Denying the defendant debt collectors motion to dismiss and finding that the alleged failure to provide the consumer "with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing) at p. 12). Additionally, the Supreme Court has also found there to be standing in cases where there was no "actual damage" but where an individual's substantive rights were violated. Justice Thomas cites as part of his concurrence *Carey v. Piphus*, 435 U.S. 247, 266 (1978), where the Court held that nominal damages are appropriate when a plaintiff's constitutional rights have

been infringed but the Plaintiff cannot show further injury beyond the violation of his rights. *Spokeo* at 1554, (Thomas, J., concurring).

Defendant states that Plaintiff has failed to meet the strict standards established by this Circuit as demonstrated in *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971(7th Cir. 2004). Not only did *Sarver* had to do with the FCRA which is not a strict liability suit unlike the FDCPA, this Court and others have established that emotional distress has been found in cases similar to Plaintiff. *Cannon v. SC & Assocs., LLC*, 2009 U.S. Dist. LEXIS 73433 *5-6 (*Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($ 50,000 in actual damages awarded in absence of testimony other than worry, stress and anxiety); *Stevenson v. TRW*, 987 F.2d 288 (5th Cir. 1993); *Belile v Allied Medical Accounts Control Associated Bureaus, Inc.*, 209 B.R. 658 (E.D. Pa. 1997) (Consumer is entitled to actual damages under the FDCPA…for emotional distress arising from unlawful debt collection practices arising from letter violation); *Crossley v Lieberman*, 90 B.R. 682 (E.D. Pa 1988), aff'd, 868 F.2d 566 (3d. Cir 1989) (actual damages in the form of emotional stress assessed at $ 1,000 for debt collector's violation of the FDCPA).

The court in *Bass v. I.C. Systems*, held that a plaintiff can establish an injury that meets the requirements for standing under Article III regardless of whether he had made payments to the debt collector. *Bass v. I.C. Sys.*, 2018 U.S. Dist. LEXIS 115115, 2018 WL 3374656, at *5, quoting *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739 (N. D. Ill. 2017). Other courts have found for similarly situated plaintiffs. *Bass*, 2018 WL 3374656 at *1050-51, citing *Aguirre v. Absolute Resolutions Corp.*, No. 15 C 11111, 2017 U.S. Dist. LEXIS 159107, 2017 WL 4280957, at *3 (N.D. Ill. Sept. 27, 2017); *Keys v. Collection Prof'ls, Inc.*, No. 6 C 8452, 2018 U.S. Dist. LEXIS 48803, 2018 WL 1469006, at *3 (N.D. Ill. Mar. 26, 2018). A plaintiff also has standing under the FDCPA because the FDCPA is designed to protect consumers from harms beyond

erroneous payments to debt collectors and Congress is well positioned to identify intangible harms that meet minimum Article III requirements. Bass, 2018 WL 3374656 at *5, quoting *Spokeo* at 1549.

Congress surely intended to make the statutory violation of §1692g(b) a concrete harm because it allowed statutory damages rather than requiring actual damages, and a violation of this section deprives Plaintiff of important substantive rights, specifically, the right to dispute her debt. When a debt collector violates this section of the FDCPA, it deprives a consumer of important private rights granted by the FDCPA, thus giving them standing to sue regardless of whether they can show out-of-pocket damages or emotional distress. Because of the foregoing reasons, Plaintiff has easily established Article III standing.

**B.** **Defendant overshadowed Plaintiff's Rights because the language of the second letter rendered the language of the first letter ineffective.**

Defendant argues that there is no dispute that the initial letter to Plaintiff complied with the FDCPA because it provided the requisite notice to Plaintiff. (Memorandum, Dkt. # 39, pg. 7) Plaintiff is not arguing that the initial letter violated the FDCPA; it is the second letter that overshadowed Plaintiff's rights. Defendant cites to *Durkin v. Equifax Check Servs.*, in which the court stated that a debt collector's right to collect a debt means that a debt collector can bring a lawsuit during the validation period in order to do so. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2004) (Memorandum, Dkt. # 39, pg. 9) This argument has no purpose as Plaintiff does not dispute that a debt collector could communicate with a consumer in a way that does not violate the FDCPA. What Defendant is not allowed to do is communicate in a way that contradicts or overshadows the statutory notice in a way that makes the language confusing. *Johnson v. Revenue Mgmt. Corp.* 169 F.3d 1057, 1060 (7th Cir. 1999).

Defendant states that Plaintiff's claim is without merit and that this Court should view this case in light of *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997). In *Bartlett*, the court established that the consumer must be protected against confusion, whatever form it takes be it outright contradiction, literal overshadowing, or the failure to explain an apparent contradiction. *Hennings v. Alltran Fin*., LP, 2017 U.S. Dist. (quoting *Bartlett v. Heibl*, 128 F.3d, 497, 500-01 (7th Cir. 1997) "A debt validation notice, to be valid, must be effect and it cannot be cleverly couched in such a way as to eviscerate its message." *Olson v. Risk Mgmt. Alternatives, Inc*., 366 F.3d 509, 512 (7th Cir. 2004) Despite what Defendant argues, notices sent to debtors must not confuse them about the verification rights established by the FDCPA. *Walker v. National Recovery Inc*., 200 F.3d 500, 301 (7th Cir. 1999)

In *Allen v. NCO Financial Systems, Inc.,* 2002 U.S. Dist. LEXIS 10513 (N.D. Ill. 2002) the plaintiff filed a lawsuit when the defendant sent a second collection letter, the language of which overshadowed, and thus rendered ineffective the statutorily required validation notice. Id. at 1, Defendant sent a collection letter that stated,

> "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification."

> *Id*. at 4.

The second letter sent to the plaintiff in *Allen* a few days later stated the following:

> "To date, our records indicate that you have not responded to our previous letter. Perhaps this is an oversite [sic] on your part. The balance due on this account is due and payable in

full. Please forward a check or money order for the balance in full. You may expedite this matter by arranging for a check by phone payment by calling (800) 891-8408.

*Id*.

The goal of the FDCPA is to prevent abusive debt collection practices and in particular, debt collectors are required to inform debtors at the outset that the debtor has 30 days to dispute the validity of the debt, and that in response to a written request, the debt collector will obtain verification and a copy of the debt will be mailed to the consumer. 15 U.S.C. § 1692g(a)(1)-(4). In addition, a debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way to eviscerate its message. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). The court held that defendant violated the FDCPA because the letter was confusing because it leads the unsophisticated debtor to think that she may have lost rights that still remain with her. *Allen*, 2002 U.S. Dist. LEXIS at 8. The letter implied that the time to protest was over because it did not reiterate the validation notice. *Id*.

Such is the case here with Defendant's second letter to Plaintiff. The first letter stated in part that Plaintiff had 30 days after receiving the letter to dispute the amount in the letter. The first letter also stated that Plaintiff had 45 days from the date that Defendant received the debt to respond otherwise her debt may be reported to the consumer reporting bureau. Plaintiff then received another letter on June 7, 2017, demanding payment immediately but the letter never stated whether Plaintiff still had time to dispute her debt. Because of this, Plaintiff did not know whether her right to dispute her debt remained. Defendant tries to call the second letter "pure puffery" and thus, it is not a violation of 15 U.S.C. § 1692g(b). The second letter clearly states, "PAY THIS AMOUNT $250.00" and "Please call us immediately to make arrangements for payment which will cease further collection efforts on your account." The only bizarre interpretation is Defendant's in arguing that the language in the letter is not a demand for immediate payment on

its face. Defendant cites to *LaMarr v. Comput. Credit, Inc.*, 2018 U.S. Dist. LEXIS 185211 (N.D. Ind. Oct. 30, 2018) and *Nieto v. MRS Assocs. d/b/a MRS BPO, LLC*, 2018 U.S. Dist. LEXIS 192004 (N.D. Ill. Nov. 9, 2018) to support its argument that Plaintiff's rights were not overshadowed. Both of these cases are distinguishable from the instant case. First, *LaMarr* was found on a motion to dismiss action, which is a lesser standard of proof to meet. We have passed that stage and Defendant needs more in order to for this Court to find in favor of its motion for summary judgment. Second, the letter that Defendant sent to Plaintiff is not mere puffery; it is clearly a demand for payment. 'PAY THIS AMOUNT' and 'Please call us immediately to make arrangements' can only be construed as such. The word 'immediately' means just that. Defendant wanted Plaintiff to pay as soon as she received the second letter. Trying to interpret the language as anything but a demand for payment is absurd. The same reasoning applies to *Nieto*. The second letter here did not contain settlement options or a mere suggestion to pay. It clearly stated to Plaintiff "PAY THIS AMOUNT." In addition, the initial letter stated that "This bill may be reported to a credit reporting bureau if not paid in full within 45 days from the date we first received your account." The second letter states that Plaintiff's account may have been reported to a consumer reporting agency and that she should pay her bill immediately to improve her credit file. This language goes beyond a mere suggestion as Defendant implies that Plaintiff's credit score may have already been damaged. Again, there is no room for misinterpretation here as Defendant spelled out what it wanted Plaintiff to do. As a result of Defendant's letters to Plaintiff, she had no idea whether her account had been reported to the consumer reporting bureaus or if she still had time. The ambiguity of the language of the letter understandably confused Plaintiff who would not be able to tell if she had enough time to validate or dispute her debt prior to it being reported to the consumer reporting bureaus.

Because the second letter was a clear demand for immediate payment, Plaintiff's rights were overshadowed because the letter was sent prior to the end of the validation period as there was no indication that Plaintiff still could have requested validation of her debt. Therefore, the letter was misleading under the unsophisticated consumer standard for the same reasons that the letter in *Allen* was confusing. Therefore, Defendant's letter violated the FDCPA and this Court should find in favor of Plaintiff.

**C.     Defendant violated the FDCPA when it sent the letter prior to the end of the validation period.**

Defendant hinges its argument on the premise that Plaintiff testified that she did not know exactly when she received the letters and therefore, it could be possible that the second letter was received once the validation period had ended. The problem with Defendant's argument here is two-fold. Defendant admitted that it did not know exactly when the letters were sent either as the Defendant uses a letter vendor to send out its mailings. (Memorandum, Dkt. # 39, pg. 11) If Plaintiff is unsure about when she received the letters, the reverse is true as well since the only proof that Defendant gave of its procedural audits is the affidavit by Jason Messina. However, Defendant's Memorandum contradicts the testimony of Jason Messina who not only stated that it was not Defendant's policy to send letters 30 days apart, but that it was Defendant's decision to send the letter on June 7. (See Plaintiff's SOF ¶¶15-16) Defendant also states that Plaintiff did not know when she received the letters that Defendant sent. Defendant is misinterpreting Plaintiff's testimony. Plaintiff stated that she received the first letter on or about May 7, 2017 and the second letter on or about June 7, 2017. (See Response to Defendant's SOF ¶¶18-19). There was no sort of broad confusion on her part that Defendant is attempting to convey. Defendant then attempts to characterize Plaintiff's claim as her being upset that Defendant did not give her time to respond to the letter. Again, Defendant mischaracterizes Plaintiff's Complaint which is that the Second Letter never informed Plaintiff that she still had time to dispute her debt. Plaintiff was under the

impression that she no longer had time to dispute her debt prior to the end of the validation period. The second letter was clearly an immediate demand for payment, not a mere suggestion or restatement of truths as Defendant tried to argue. The second letter also suggested that Plaintiff's debt may have already been reported to the consumer reporting bureaus, implying a negative consequence has occurred due to Plaintiff's delay. As stated before, Debt collectors are prohibited from engaging in collection activities that "overshadow or [are] inconsistent with the discourse of consumer's right to dispute the debt or request the name and address of the original creditor" during the validation period. *Durkin v. Equifax Check Services, Inc*., 406 F.3d 410, 416 (7th Cir. 2005). Given the facts of the case, this Court should find that Defendant violated the FDCPA when it sent a second letter that overshadowed Plaintiff's right to validate or dispute her debt within a 30-or 45-day period.

**D.    Defendant's Second Letter was Confusing and Misleading on Its Face which Satisfies the Unsophisticated Consumer Standard.**

Defendant contends that the second letter would not be misleading under the unsophisticated consumer standard. (Memorandum, Dkt. # 39, pg. 12) An unsophisticated consumer at the end of their validation window proposed by Defendant could believe that they would not have time to send a request for a validation of debt or dispute the debt, and still have time to make a payment by the time demanded by the Letter. A debtor's dispute of a debt triggers certain requirements by a debt collector. See *Clark v. Absolute Collection Service, Inc*., 741 F.3d 487, 491 (4th Cir. 2014). Defendant's communications to an unsophisticated consumer overshadow the thirty-day validation period required by the FDCPA.

Defendant argues that the Plaintiff's claim cannot survive just by presenting an affidavit that only she was confused. (Memorandum, Dkt. # 39, pg. 13) Defendant goes on to argue that Plaintiff has no evidence, extrinsic or otherwise that the language in the second letter would be confusing to a general population of like-consumers. *Id*. at 14. Courts have suggested that

consumer surveys would be permissible to use as evidence in this instance where it is unclear if the average unsophisticated consumer would be misled by a letter from a debt collector. *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999). This would apply only if the letter fell into the second *Ruth* category, which this one does not.

According to this Circuit, whether a dunning letter would be confusing based on an unsophisticated consumer standard relies in part on which *Ruth* category it falls under. *Ruth v. Triumph P'Ships*, 577 F.3d 709 (7th Cir. 2009). The first category includes cases in which the allegedly offensive language used by the debt collector is plainly and clearly not misleading. *Id.* at 800. The second category of cases includes debt collection language that is not misleading or confusing on its face but has the potential to be misleading to the unsophisticated consumer. *Id.* The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence for the plaintiff to be successful. *Id.* at 801. The second letter clearly falls under the third category as the letter was plainly deceptive on its face. The first letter gave Plaintiff thirty days from the time she received the letter to respond to validate her debt. By sending a second letter prior to the end of the validation period that was a clear demand for payment, Defendant created a confusing impression of urgency, when, in reality, the consumer has thirty days in which to decide on his course of action." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1133 (N.D. Ill. 1998). To make matters worse, the initial letter gave Plaintiff 45-days from the time that Defendant received the debt to pay the debt in full or else it may be reported to a consumer reporting bureau. Nothing in the FDCPA requires Defendant to provide Plaintiff with a 45-day period to pay her debt. In doing so, Defendant unnecessarily confused Plaintiff. Nothing in the second letter mentioned whether Plaintiff had time to dispute her debt or if the debt had been reported to the consumer reporting bureaus. The language was left vague and misleading in an egregious violation of the FDCPA.

For these reasons, Defendant's communication overshadowed Plaintiff's thirty-day validation period in violation of 15 U.S.C. 1692g(b), and Plaintiff has demonstrated that she is entitled to summary judgment as a matter of law.

## **CONCLUSION**

Wherefore, for the aforementioned reasons, Plaintiff respectfully requests that this Court would grant her Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

Respectfully Submitted,

By: s/*Celetha Chatman*
One of Plaintiffs' Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
celethachatman@communitylawyersgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I, Celetha Chatman, an attorney, hereby certify that on March 20, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: March 20, 2019**                                        Respectfully submitted,

                                                            By: ____/s/ *Celetha Chatman*