UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLENE SPARROW OLOKO, ) | |
| ) | Case No. 17-cv-7626 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| RECEIVABLE RECOVERY SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marlene Sparrow Oloko ("Oloko") filed this lawsuit alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Oloko specifically asserts that Defendant Receivable Recovery Services, LLC ("RRS") violated 15 U.S.C. § 1692g by sending two collection letters during the validation period—the second of which overshadowed the validation notice in the initial letter. The parties filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons explained below, the Court grants RRS's motion and denies Oloko's motion.

**Background**

The following facts are undisputed unless otherwise noted. Oloko incurred a financial obligation originally owed to Our Lady of the Lake Medical Center for medical expenses, which was placed with RRS for collection. RRS sent Oloko an initial collection letter dated May 8, 2017, and the parties agree that this initial letter complied with 15 U.S.C. § 1692g because it contained a validation notice as required under § 1692g(a). The initial letter also informed Oloko that her account may be reported to the credit bureaus within 45 days from when RRS received the account from Oloko's creditor. Oloko does not base her FDCPA claim on this initial collection letter.

During the 30-day validation period, RRS sent a second collection letter on June 7, 2017, which was entitled TAX SETTLEMENT and referenced federal tax refunds. At the top of the letter, the amount owed was indicated as: BALANCE: $250.00. The body of this dunning letter stated:

> As you may know, special tax refunds are being issued by the Federal government to qualified taxpayers beginning this month.
>
> Your obligation listed above is seriously past due. We recognized that sometimes well-intentioned individuals may get behind on payment due to lack of funds. This tax refund is an opportune time to settle your obligation by applying the refund to your delinquent balance. Please call us immediately to make arrangements for payment which will cease further collection efforts on your account.
>
> Please note that your account may have been reported to a credit reporting agency as unpaid collection. Assuming that you value your credit record, you should pay this outstanding bill immediately to improve your credit file.
>
> If your refund amount is not sufficient to cover your outstanding obligation or you are not due a tax refund, call us immediately to work out a solution before further steps are necessary.
>
> Payment should be made directly to our office. Unfortunately, if you do not make payment in full or acceptable arrangements within the next thirty (30) days, we will assume you do not wish to pay on your obligation and further steps may be required to obtain payment. Thank you for your immediate attention to this matter.
>
> **\*\*\*This is a communication from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.\*\*\***

The following tear-off remittance slip was at the bottom of the letter:

```
✂------------------------------------------------------------------------------✂
To pay online visit www.rrspay.com. To pay by check or credit card, complete the boxes below and mail this letter back
with your payment.                    IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

                                              [ ]    VISA    [ ]
                                      CARD NUMBER                              EXP. DATE
                                      CARD HOLDER NAME                         CVV
                                      DATE         PAY THIS AMOUNT    ACCOUNT #
PO BOX 7100                           06-07-17     $250.00                            700
METAIRIE, LA 70010-7100               SIGNATURE                       AMOUNT PAID

         ***This communication is from a debt collector and is an attempt to collect a debt.
                   Any information obtained will be used for that purpose.***
```

(R. 1-1, Ex. C, 6/7/17 letter).

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

*Article III Standing*

Because subject matter jurisdiction is the threshold question in all federal lawsuits, the Court first turns to RRS's argument that Oloko does not have Article III standing. To establish Article III standing, Oloko has the burden of showing injury-in-fact traceable to RRS's conduct that is redressable by a favorable judicial decision. *Casillas v. Madison Avenue Assoc., Inc.,* 926 F.3d 329, 333 (7th Cir. 2019). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (citation omitted). As the *Spokeo* Court explained, a plaintiff cannot bring "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

3

RRS contends that Oloko has not met her burden in establishing injury-in-fact because she does not know exactly when she received the two dunning letters at issue, therefore, she cannot unequivocally assert that she received the second letter during the 30-day validation period. RRS's argument is based on a genuine dispute as to this material fact, and thus is not well-suited for summary judgment. Equally unavailing is RRS's argument that Oloko cannot establish emotional damages because "[i]njury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery[.]" *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("[t]he fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed."); *see also Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing.").

Nevertheless, Oloko still has the burden of establishing Article III standing. Under recent Seventh Circuit law, this requires Oloko to "do more than point to a bare procedural violation; [s]he must show that the violation harmed or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute.'" *Lavallee v. Med-1 Solutions, LLC*, --- F.3d ---, 2019 WL 3720875, at *2 (7th Cir. Aug. 8, 2019) (quotation omitted); *see also Casillas*, 926 F.3d at 332 ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

Oloko's theory of liability is that the second dunning letter contradicted the first letter and caused confusion because the second letter demanded immediate payment before the end of the 30-day validation period. Under the circumstances, Oloko has shown that the alleged § 1692g violation presented an appreciable risk of imminent harm to a concrete interest Congress sought to protect, namely, the concrete interest in receiving accurate information about her debt. To clarify, the

4

FDCPA "seeks to protect debtors from 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Casillas*, 926 F.3d at 333 (quoting 15 U.S.C. § 1692(a)). "Section 1692g serves this end by giving debtors a way to dispute or verify their supposed debts" by "obligating creditors to tell debtors how to do that." *Id.* at 333-34. And, it is well settled that "[n]otices sent to debtors must not confuse them about the verification rights established by the Fair Debt Collection Practices Act." *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). As such, Congress sought to protect debtors from inaccurate information in relation to exercising their rights under § 1692g, and thus Oloko has shown an appreciable risk of imminent harm. *See Casillas*, 926 F.3d at 334 ("Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit.") (citation omitted).

*Merits Determination*

Satisfied that Oloko has Article III standing to bring her § 1692g claim, the Court turns to her argument that RRS's second dunning letter overshadowed the initial collection letter. As discussed, Oloko argues that RRS's second letter overshadowed her validation rights because it rendered the language of the first letter ineffective. She specifically argues that the second letter contradicted the first letter because it demanded immediate payment and did not tell her if she still had time to dispute her debt before RRS reported her debt to the credit bureaus.

Under 15 U.S.C. § 1692g(a), a debt collector must disclose to the debtor the name of the creditor, the amount owed, and the debtor's right to dispute the validity of the debt within thirty days—commonly known as a "validation notice." *See Casillas*, 926 F.3d at 334; *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 343 (7th Cir. 2018). In addition, § 1692g(b) states that any "collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the

5

original creditor." 15 U.S.C. § 1692g(b). In short, the FDCPA "forbids a debt collector from overshadowing the disclosure and from engaging in communication inconsistent with the disclosure." *O'Boyle*, 910 F.3d at 343.

When determining whether debt collection letters comply with the FDCPA, courts view them "through the objective lens of an unsophisticated consumer who, while 'uninformed, naïve, or trusting,' possesses at least 'reasonable intelligence, and is capable of making basic logical deductions and inferences.'" *Smith v. Simm Assoc., Inc.*, 926 F.3d 377, 380 (7th Cir. 2019) (citation omitted). Courts ask "whether someone of modest education and limited commercial savvy would likely be" confused by the letter. *O'Boyle*, 910 F.3d at 344. Whether the letter actually confused Oloko herself is not dispositive because the Court's inquiry is objective. *See id.*; *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) ("'a mere claim of confusion is not enough' to prevail on summary judgment. Rather, the 'plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion.'") (citation omitted).

Oloko asserts that the second dunning letter clearly demanded immediately payment—on its face—because it states, "PAY THIS AMOUNT $250.00" on the remittance slip and in the body of the letter it says, "Please call immediately to make arrangements for payment which will cease further collection efforts on your account." First, Oloko's reliance on the remittance slip is misplaced because both dunning letters had this tear-off portion at the bottom of the letter, therefore, there is no contradiction between the two dunning letters. Moreover, this tear-off portion does not say payment is due immediately. *See, e.g., Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057 (9th Cir. 2002) (per curiam). Also, the remittance slip carries no sense of urgency that would confuse an unsophisticated consumer, such as threatening legal action if the

6

payment is not made within a certain time period. *See Avila v. Rubin,* 84 F.3d 222, 225 (7th Cir. 1996); *see, e.g., Thompson v. Harris & Harris, Ltd.*, 2019 WL 952144, at *4 (N.D. Ill. Feb. 27, 2019).

Second, the statement "[p]lease call immediately to make arrangements for payment which will cease further collection efforts on your account" does not imply that RRS was demanding immediately payment as Oloko argues. This sentence, for example, does not set deadlines contrary to the 30-day validation period nor does it reflect a sense of urgency. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012). Instead, the sentence is tucked away at the end of the second paragraph of the letter, and, at best, conveys RRS's desire to expedite payment, which does not amount to a violation of § 1692g in this Circuit. *See id.*; *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575–76 (7th Cir. 2004).

Because the second dunning letter did not demand immediate payment on its face, to survive summary judgment, Oloko must present "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading." *Ruth v. Triumph P'ship*, 577 F.3d 790, 800 (7th Cir. 2009); *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (because plaintiff "did not present any extrinsic evidence at the summary judgment stage, he must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature."). Oloko has failed to present any such evidence. Indeed, she asserts that she need not present extrinsic evidence because the second dunning letter was plainly confusing on its face, an argument the Court rejects. Therefore, Oloko's failure to present extrinsic evidence entitles RRS to summary judgment on this first argument.

Next, Oloko takes issue with the following paragraph: "Please note that your account may have been reported to a credit reporting agency as [an] unpaid collection. Assuming that you value your credit record, you should pay this outstanding bill immediately to improve your credit file." Oloko argues that as a result of this language, she had no idea whether RRS had reported her debt to

7

the consumer reporting bureaus or if she still had time to pay. The Court's inquiry, however, does not concern Okoro's actual, subjective confusion, but rather, whether this statement is misleading to an unsophisticated consumer. *See Smith*, 926 F.3d at 380; *O'Boyle*, 910 F.3d at 344.

With this standard in mind, the language Oloko highlights is that her account ***may*** have been reported to a credit reporting agency, but an "unsophisticated consumer would not understand the word 'may' to mean 'will.'" *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018). In addition, this part of the second dunning letter highlights a possible negative consequence of failing to pay the debt, which courts have found permissible to encourage debtors to pay their debts. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 417–18 (7th Cir. 2005). As such, Oloko's second argument that the June 2017 letter violated § 1692g on its face is without merit.

Again, Oloko has failed to present extrinsic evidence establishing that unsophisticated consumers would find this paragraph misleading. *See Lox*, 689 F.3d at 822; *Ruth*, 577 F.3d at 800. Accordingly, Oloko's failure to adduce extrinsic evidence to support her § 1692g claim entitles RRS to summary judgment.

**Conclusion**

Based on the foregoing, the Court grants defendant's summary judgment motion [38] and denies plaintiff's summary judgment motion [33]. Plaintiff's complaint is dismissed with prejudice. Civil case terminated.

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

Date: 8/19/2019

8